IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| GREGORY GOODSON, | ) |
| :--- | :--- |
| Plaintiff, | ) |
| v. | ) Case No. 4:19-cv-00092-HFS |
| AETNA LIFE INSURANCE COMPANY | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This case involves the Missouri common law prohibition of so-called "subrogation rights" of insurers. A ruling is required on whether the ERISA statute pre-empts Missouri law on that subject. For the reasons below I follow Second Circuit cases applying an ERISA savings clause exception, allowing use of state laws in insurance cases. I thus conclude that an arbitrary and capricious ruling was made, in violation of controlling law, whereby Aetna violated the rights of its insured, Goodson, by deducting from his disability payments a portion of sums received by him (and his wife) in personal injury litigation  Aetna treated 50% of a settlement sum as being relating to future work disability and thus deductible under the policy terms from disability payments due thereunder.

1

Assuming arguendo that the deductions were properly made under the policy terms, and would otherwise be permissible under ERISA, I am satisfied that a Missouri common law rule rejecting that practice should prevail. It is not pre-empted by ERISA but is expressly saved from pre-emption by a savings clause. 29 U.S.C. § 1144(b)(2)(A).[1]   While language in a 1989 Eighth Circuit decision (the Baxter case, infra) apparently conflicts with the more recent Second Circuit rulings, I conclude that Supreme Court decisions later than the cited ruling by our Circuit clarify pertinent pre-emption law and supersede the views expressed in the Eighth Circuit opinion. Our Circuit has itself so ruled in a comparable case not involving the subrogation rule.

As indicated, Mr. Goodson left his employment in 2016 because of disability (a lower back condition and advancing Parkinson's disease). He is now

---

[1] **(b) Construction and application**
**(1)** This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.
**(2)(A)** Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
**(B)** Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

entitled to disability insurance payments under his former employer's group policy. He gave up his employment within weeks after an automobile collision injury, and subsequently sued the other driver and settled the case for some $100,000. Although there are some disputes regarding Aetna's calculation of settlement sums attributable to loss of future earnings capacity, for present purposes I assume Aetna appropriately followed the policy provisions and, absent Missouri law considerations, reasonably concluded that it was entitled to make deductions from Goodson's disability insurance payments for a period of time. But Aetna's briefing does not contest that under longstanding common law rulings in Missouri, insurers of Missouri residents subject to Missouri law would generally be legally prohibited from making those deductions. This is referred to as an anti-subrogation rule, but it goes beyond technical subrogation issues and effectively prevents insurers from benefiting from collateral source payments to limit their obligations.[2]

---

[2] In Reliance Ins. Co. in Liquidation v. Chitwood, 433 F.3d 660, 662-3 (8th Cir. 2006), Judge Arnold held that Missouri law recognizes the anti-subrogation rule, which is that "where an insurance company attempts to recover, as a subrogee, from a coinsured generally covered under the policy, whose negligent act occasioned the loss, the action must fail in the absence of design or fraud on the part of the coinsured." *Sherwood Med. Co. v. B.P.S. Guard Services, Inc.,* 882 S.W.2d 160, 162 (Mo.Ct.App.1994) (internal quotation omitted). The Missouri courts have held that "allow[ing] an insurer to sue for recovery against one of its own insured would violate the basic principles of subrogation and equity, as well as violate sound public policy." *Jos. A. Bank Clothiers, Inc. v. Brodsky,* 950 S.W.2d 297, 303 (Mo.Ct.App.1997). The anti-subrogation rule prevents an insurer from passing its loss to the insured, thereby avoiding coverage for the very risk for which it accepted premiums, and it prevents insurers from having a conflict of interest that might deprive an insured of a vigorous defense. 16 Couch on Insurance § 224:3 (3d ed. 1995 & Supp.2004); *see also North Star Reins. Corp. v. Continental Ins. Co.,* 82 N.Y.2d 281, 294–95, 604 N.Y.S.2d 510, 624 N.E.2d 647, 653 (1993).

In Aetna's reply brief supporting summary judgment (Doc. 36 p. 7) it is contended that one reason there is no escape from pre-emption is that this case involves an offset by the insurer rather than a subrogation assertion or a reimbursement claim. The offset issue is really one contending the Missouri courts would save Aetna's conduct from disapproval under their broad coverage "anti-subrogation" doctrine--it has nothing to do with ERISA as such. Using an offset is simply one way to deprive the insured of part of his claim against both the tort-feasor and the insurer. Aetna refers no court decision or statute anywhere that has made this distinction, once an anti-subrogation doctrine in insurance cases has been adopted, reaching both subrogation and reimbursement, and there is no reason to suppose the Missouri courts would modify the doctrine in the manner Aetna seeks.

As Judge Heaney noted in <u>Baxter By and Through Baxter v. Lynn</u>, 886 F.2d 182 (8th Cir. 1989), the Missouri rule can be criticized for, among other things, allowing insureds to enjoy "double payment" to compensate for their misfortunes. The longstanding Missouri rule could of course be challenged and changed by the Missouri Supreme Court or the General Assembly, but that has

4

not occurred in the more than hundred years during which the rule has been in effect . [3]

The two basic arguments by Aetna are (1) that the Baxter requirement for avoidance of pre-emption, that a state law regulate the "business of insurance", is not fulfilled when the anti-subrogation rule here deals only with a narrow issue of law applicable to insurers , and (2) that the savings clause requirement of a local "law" favoring the insured contemplates a statute, not merely a judge-made common law rule.  A Tenth Circuit case makes clear that the supposed statutory requirement that Aetna advocates (in argument but with no authority) does not exist. A common law rule suffices.  Winchester v. Prudential Life Ins. Co. of America, 975 F.2d 1479, 1487, n. 5, (10th Cir. 1992). "We emphasize that ERISA preemption covers state decisional law as well as statutory law.  See 29 U.S.C. Sec. 1144(c)(1) ('The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.')  Similarly, the savings clause can exempt state decisional law as well as statutory law from the scope of ERISA's preemption.  Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48 n. 1; Evans v. Safeco Life Ins., 916 F.2d 1437, 1440 n. 1.  Thus we

---

[3] As noted, Aetna does not deny that the Missouri rule favors the present insured, other than contending it is pre-empted by ERISA (a somewhat ironic use of a federal statute intended to protect employee rights).

5

Case 4:19-cv-00092-HFS   Document 39   Filed 09/02/20   Page 5 of 11

utilize ERISA preemption analysis to analyze the applicable Utah decisions in this case."

As to the reach of the ERISA savings provision, preventing federal preemption of state insurance laws, Aetna rests its case entirely on what was said as one of the two grounds deciding Baxter, 886 F2d, at 182. In stating that "while laws regulating subrogation rights apply in part to holders of insurance, they do not regulate the insurance industry directly," the Baxter opinion assumed that the latter form of regulation was necessary to avoid ERISA preemption. That view was based on the circumstance that the savings provision was somewhat like earlier legislation carving out an exception for insurance in the anti-trust laws. The Baxter opinion correctly understood that the Supreme Court had drawn a parallel between the working of the ERISA savings provision and that in the McCarran-Ferguson Act, and was requiring state regulation of "the insurance industry" or "the business of insurance" in a broad sense before the exemption applied. Id. at 185. Assuming that analysis was sound when asserted, the Supreme Court has switched signals, openly and candidly.

In Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 341-2 (2003), Justice Scalia, speaking for a unanimous Court, announced "Today, we make a clean break from the McCarran-Ferguson factors and hold that for a state law to

6

Case 4:19-cv-00092-HFS   Document 39   Filed 09/02/20   Page 6 of 11

be deemed a 'law …which regulates insurance' under (the ERISA savings clause) it must satisfy two requirements."  The controlling Miller factor in this case is simply that "it must be specifically directed toward entities engaged in insurance," presumably using the plain meaning of the reformulated test.

Dealing with the same anti-subrogation issue before us here, and applying the Miller test as formulated by Justice Scalia, the Second Circuit determined that the insurer, Aetna, had violated New York's anti-subrogation rule by offsetting half of an insured's personal injury settlement recovery against his disability benefits.  Arnone v. Aetna Life Ins. , 860 F.3d  97 (2nd Cir. 2017).  If the Second Circuit applied the newly articulated test correctly the same result should occur here.

But Aetna asks that Arnone be rejected because it was based on a statute rather than a common law rule (an unsound contention dealt with above) and also because the three factor analysis used in Baxter (based on McCarran-Ferguson) supposedly still controls in this Circuit.  But the Eighth Circuit itself accepts the change of statutory interpretation that undermines the Baxter approach.  In Prudential Ins. Co.of North America v. National Park Med. Center, 413 F.3d 897, 908-11  (8th Cir. 2005) Judge Gruender acknowledged that Miller had "repudiated" the three factor McCarran-Ferguson approach and

7

"undermined our prior reasoning" in a pre-Miller aspect of that litigation. While the pertinent ruling in the Baxter case has not specifically been re-examined by the Circuit, the Miller rejection of using McCarran-Ferguson and its articulation of new language in the two-part test similarly undermines what was said about the savings clause issue in Baxter.

A district court in Louisiana rejected the Baxter complication when advocated there. Benefit Recovery v. Wooley, 2006 WL 8450137 *7 (M.D.La.). To the extent a Nebraska district court case, Everspacher v. Mutual of Omaha Ins. Co., 2005 WL 1377865 (D.Neb), fails to recognize the "clean break" that rejects the McCarran-Ferguson factors it must be considered erroneous. The Magistrate Judge did not have the benefit of the later Second Circuit cases and the Eighth Circuit's Prudential case acknowledgement that the analytical rules have changed. Aetna offers no other support anywhere for the survival of the Baxter approach after the Miller decision. It may be noted, however, that the result in Baxter remains good law, for the alternate reasons given by Judge Heaney. What is referred to as the "deemer" ruling in Baxter was endorsed by the Supreme Court in the first case that, as noted below, suggested an anti-subrogation rule would otherwise be saved from ERISA preemption. FMC Corp. v. Holliday, 498 U.S. 52 (1990). No rationale can be imagined for continuing to burden ERISA

8

decisions with some of the complexities of McCarran-Ferguson analysis . Is the Missouri rule "specifically directed toward entities engaged in insurance"? Plainly so, as Miller asks. The Missouri Supreme Court, in Nevils v. Group Health Plan, Inc., 418 S.W.3d 451, 453 (Mo. Sup. Ct. 2014)(en banc) stated, "Missouri law generally prohibits subrogation in personal injury cases by barring insurers from obtaining reimbursement from the proceeds an insured obtains following a judgment against a tortfeasor". In reversing the Missouri Court in that case because a federal-created insurer was involved, and federal law thus protected that particular insurer, the Supreme Court observed that Missouri law "does not permit subrogation or reimbursement in this context." Coventry Health Care of Missouri, Inc. v. Nevils, 137 S.Ct. 1190, 1195 (2017) Thus, the law in question is a Missouri rule dealing quite specifically with insurer conduct. No court has ruled differently when the Miller question is asked. Under Miller, therefore, a law which deals with an insurer's conduct and arrangements must be considered to "regulate insurance" when it might not so qualify under McCarran-Ferguson.

Arnone offers the only correct result, since we are all bound by the Miller rephrasing of the savings clause test. The Arnone scenario is almost the same as here—with even the same insurer. Moreover, as suggested by Judge Walker in the Second Circuit case that laid the path for Arnone, there is a Supreme Court

decision very shortly after Baxter that, without full articulation, anticipates Miller and therefore undermines Baxter. Wurtz v. Rawlings, 761 F.3d 232, 240 (2nd Cir. 2014), citing language in FMC Corp. v. Holliday, 498 U.S. 52, 60 (1990)(only the deemer clause relating to self-insurance avoids the savings clause preserving a Pennsylvania anti-subrogation law "aimed at" insurers). Justice Stevens, dissenting on the deemer issue, would have saved the statute that parallels the law in this case, and the rest of the Court signed on to the same view, if the deemer issue had not controlled.[4]

The result reached in Arnone must be reached here. Defendant's motion for summary judgment (Doc. 27) is DENIED. Plaintiff's motion for summary judgment (Doc.30) is GRANTED and Plaintiff's motion to amend (Doc. 38) is therefore DENIED as moot. A motion for entry of final judgment in a specific amount (hopefully agreed upon) shall be filed within thirty days of this date.

SO ORDERED.[5]

s/ HOWARD F. SACHS
United States District Court Judge

Dated: September 2, 2020

---

[4] While Aetna struggles for help in several district court cases (and Baxter) that pre-date or otherwise miss the message of Miller, it fails to demonstrate that the New York and Pennsylvania anti-subrogation statutes qualify more for the savings clause than does the insurance law rule in Missouri which specifically addresses insurers alone.

[5] My present inclination would be to allow recovery of the unjustified deductions plus interest, but without attorneys' fees. This is of course subject to change, if persuaded differently.

10

Case 4:19-cv-00092-HFS   Document 39   Filed 09/02/20   Page 10 of 11

Kansas City, Missouri